[No. S014519. Feb. 7, 1991.]

GENE PAUL BORRÉ, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

1048

COUNSEL

Tom Low and Jonathan I. Arons for Petitioner.

Diane C. Yu, Starr Babcock and Andrea Teper Wachter for Respondent.

OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court (review department) that petitioner, Gene Paul Borré, be suspended from the practice of law in California for five years, that execution of the order be stayed, and that petitioner be placed on probation for five years upon conditions including actual suspension from practice for two years. Petitioner contends that certain findings of the State Bar Court are not supported by the evidence, and that the recommended discipline is excessive. We disagree, and adopt the recommendation of the review department.

## FACTS

Petitioner was admitted to the practice of law in California on January 7, 1971. He has no prior record of discipline.

### A. *Facts Relating to Misconduct*

The evidence and the findings of fact of the referee, which were adopted by the review department, indicate the following:

#### Count 1: Abandonment of Client

In July 1985, Sheila Baquera and her mother, Dolores Baquera, gave petitioner a $1,000 fee to determine whether to prosecute an appeal on behalf of Sheila's boyfriend, Paul Lascano. Lascano was in state prison following felony convictions, and was then represented by court-appointed counsel. Petitioner informed the Court of Appeal, Fifth Appellate District,

that he would "be handling the appeal on behalf of Mr. Lascano." The court then terminated the appointment of the first attorney.

Petitioner obtained two extensions of time to file an opening brief, but never filed it. On December 26, 1985, the court dismissed the appeal for failure to file the brief. Petitioner did not visit Lascano, send him copies of his extension requests, or notify him that the appeal had been dismissed. He did not communicate with him in any way until he informed him in a letter dated February 11, 1986, that he had "abandoned" the appeal. Lascano did not learn that the appeal had actually been dismissed until much later.

### Count 2: Misleading the State Bar

On June 17, 1987, a State Bar investigator informed petitioner in writing that Lascano had filed a complaint against him, and requested a response. Petitioner replied on June 29, 1987. He claimed he had "advised" Lascano's mother and girlfriend, who he believed were the ones who retained him, that there were no appealable issues to raise in the appeal.

The investigator asked petitioner to supply proof that he had informed Lascano's mother that he would not file the appeal. Petitioner responded on October 28, 1987, and enclosed a copy of an alleged letter from him to "Mrs. P. Lascano," dated November 26, 1985 (hereafter the November 26 letter). In that letter, he stated that he had been "unable to find any issues to raise on appeal"; that he would "not pursue a frivolous appeal"; and that he had obtained an extension until December 18, 1985, to file the brief "if you desire to have some other lawyer handle this matter." Petitioner testified at the disciplinary hearing that he had the letter prepared on or before its date.

The referee found that the November 26 letter was not genuine, and that petitioner "created or caused to be created an exculpatory letter which he thought would relieve him of his failure to file an opening brief by trying to show he had advised Mr. Lascano's mother that he was not going to handle the appeal prior to the date the court actually dismissed the appeal."

### B. Findings and Recommendations Below

In count 1, the referee found that petitioner: failed to keep his client, Lascano, informed of significant developments in his case (Bus. & Prof. Code, § 6068, subd. (m) [all statutory references are to this code]); abandoned his client and the case (§§ 6068, subd. (a), 6103 [we note that section 6103 does not itself define a duty or objection but provides only that a violation of an oath or duty defined elsewhere is a ground for discipline—*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 815 (263 Cal.Rptr. 798, 781

P.2d 1344)); intentionally deceived his client by informing him the appeal had been abandoned when in fact it had been dismissed (§ 6128, subd. (a)); withdrew from employment without taking reasonable steps to avoid dismissal of the appeal (former rule 2-111(A)(2), Rules Prof. Conduct [all undesignated rule references are to the former Rules of Professional Conduct, which were in effect at the time of the conduct at issue]); and "recklessly represented to the Court of Appeal that he was Lascano's appellate attorney when he knew or should have known that he could not reasonably perform the duties of an appellate attorney . . ." (former rule 6-101(A)(2)).

In count 2, the referee found that petitioner: misled the State Bar by telling the investigator he had obtained an extension of time to check if there would be an appeal when in fact he had told the Court of Appeal he would handle the appeal and was legally obligated to do so; lied under oath regarding the November 26 letter; and deceived the State Bar when he sent them the alleged copy of that letter. (§§ 6068, subds. (a) & (d), 6103.) The referee also found that petitioner committed acts of moral turpitude when he created or caused to be created the November 26 letter, when he sent it to the State Bar, and when he lied about it under oath. (§ 6106.)

The referee recommended that petitioner be suspended from the practice of law for five years, that execution of the order be stayed, and that petitioner be placed on probation for five years on conditions including actual suspension for two years. By a vote of 10 to 1, the review department adopted the recommendation. The dissenter would have recommended disbarment.

DISCUSSION

Petitioner does not dispute his culpability as to count 1. He contends there was insufficient evidence that the November 26 letter was a later fabrication; the referee should have considered certain factors in mitigation; the referee should not have considered in aggravation an allegedly unauthorized letter written by petitioner's former attorney; and the recommended discipline is excessive.

We first review the finding that the November 26 letter was a fabrication. ■ Petitioner has the burden of showing that the findings of the referee and review department are not supported by substantial evidence. Although we independently examine the record, we give great weight to the findings below, especially when, as in this case, they are based on conflicting testimony. (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 931 [258 Cal.Rptr. 235, 771 P.2d 1323].) The referee is in the best position to resolve

credibility questions because the referee is able to observe the demeanor of the witnesses and evaluate the character of the witnesses. (*Jones* v. *State Bar* (1989) 49 Cal.3d 273, 289 [261 Cal.Rptr. 397, 777 P.2d 170].)

██ The referee based his finding that the letter was a fabrication on two sources of evidence. First, the addressee of the letter testified she never received it and she had never had trouble receiving mail at her address. Second, petitioner's secretary at the time, whose initials were placed on the letter as those of the typist, compared the letter with another that she had typed about the same time. She noted a number of errors and discrepancies from the usual office format in the November 26 letter. She testified she did not "think" she prepared that letter, and "would hope" that such a letter would not go out in the mail. This evidence supports the referee's findings.

Petitioner testified the letter was genuine. The referee, however, resolved this conflict in the evidence adversely to petitioner. Merely repeating his version of the events does not meet the burden of demonstrating that the referee's findings are erroneous. (*Van Sloten* v. *State Bar, supra,* 48 Cal.3d at p. 931.) Accordingly, we see no reason to depart from the referee's findings. (*Jones* v. *State Bar, supra,* 49 Cal.3d at p. 289.)

Petitioner's arguments regarding mitigating evidence generally assume we agree with him regarding the genuineness of the November 26 letter. As stated above, we disagree. His remaining argument regarding mitigation will be discussed in reviewing the recommended discipline.

Petitioner next contends the referee erred in considering in aggravation an allegedly unauthorized letter his former attorney wrote after the referee had announced his interim decision. The interim decision stated the referee's factual findings, and requested counsel to submit arguments on "mitigation, aggravation and recommendations as to the level of discipline." Petitioner criticizes his former attorney for supposedly admitting in the responding letter that petitioner had fabricated the November 26 letter. We do not read counsel's letter in that fashion. Since it came *after* the referee's factual findings, it merely accepted those findings, and made the best possible argument in mitigation. After the facts have been fully litigated, an attorney may, and often must, accept adverse factual findings for purposes of arguing the proper disposition.

In any event, the letter played no role in the referee's factual findings. Although the referee viewed its contents as demonstrating that petitioner "fails to comprehend and accept the gravity of his actions," the letter was a minor factor in light of the case as a whole. We need not decide whether the

referee properly considered this factor, for we will now review the recommended discipline without regard to it.

Petitioner finally contends the recommended discipline is excessive. ▮ We exercise our independent judgment in determining the appropriate discipline, but in doing so we give great weight to the recommendation of the State Bar Court. (*Arm* v. *State Bar* (1990) 50 Cal.3d 763, 774 [268 Cal.Rptr. 741, 789 P.2d 922].) Petitioner has the burden of demonstrating that the recommendation is unwarranted or erroneous. (*In re Lamb* (1989) 49 Cal.3d 239, 245 [260 Cal.Rptr. 856, 776 P.2d 765].) The protection of the public and the bar, not punishment, is the primary purpose of attorney discipline. We must accordingly consider all relevant mitigating and aggravating circumstances. (*Coombs* v. *State Bar* (1989) 49 Cal.3d 679, 693 [262 Cal.Rptr. 554, 779 P.2d 298].)

▮ Reviewing the record independently, we find the recommendation is reasonable and adopt it. Petitioner's abandonment of his incarcerated client was itself a serious matter warranting substantial discipline. (*Layton* v. *State Bar* (1990) 50 Cal.3d 889, 903-904 [268 Cal.Rptr. 845, 789 P.2d 1026].) His fabrication of the November 26 letter and subsequent lies, moreover, are particularly egregious. "We have held that fraudulent and contrived misrepresentations to the State Bar may perhaps constitute a greater offense than misappropriation." (*Chang* v. *State Bar* (1989) 49 Cal.3d 114, 128 [260 Cal.Rptr. 280, 775 P.2d 1049]; see also *Warner* v. *State Bar* (1983) 34 Cal.3d 36, 44 [192 Cal.Rptr. 244, 664 P.2d 148].) Petitioner's acts manifest an abiding disregard of the fundamental rule of ethics—that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice. (*Levin* v. *State Bar* (1989) 47 Cal.3d 1140, 1147 [255 Cal.Rptr. 422, 767 P.2d 689].) The court below correctly found that these acts demonstrate moral turpitude. (*Phillips* v. *State Bar* (1975) 14 Cal.3d 492, 500 [121 Cal.Rptr. 605, 535 P.2d 733, 91 A.L.R.3d 966].)

In addition to continuing to insist that the November 26 letter is genuine, petitioner relies upon his discipline-free career since 1971 as a mitigating circumstance. ▮ Lack of a prior disciplinary record over many years of practice may be considered in mitigation when coupled with present misconduct which is not deemed serious. It does not, however, preclude substantial discipline for serious misconduct. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(e)(i); *Amante* v. *State Bar* (1990) 50 Cal.3d 247, 256 [266 Cal.Rptr. 648, 786 P.2d 375].) The recommended discipline is fully warranted, and we adopt it.

## DISPOSITION

We order that petitioner Gene Paul Borré be suspended from the practice of law for five years but that execution of the suspension order be stayed and that he be placed on probation for five years on all the conditions of probation adopted by the review department at its November 8, 1989, meeting, including actual suspension for the first two years. Petitioner shall also pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year after the effective date of this order, and comply with the provisions of rule 955(a) and (c), California Rules of Court, within 30 and 40 days, respectively, after the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)